

FILED

2014 JAN 13  PM 4:39

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Eric H. Gibbs (State Bar No. 178658)
2  ehg@girardgibbs.com
   Matthew B. George (State Bar No. 239322)
3  mbg@girardgibbs.com
   Jennifer L. McIntosh (State Bar No. 264903)
4  jlm@girardgibbs.com
5  **GIRARD GIBBS LLP**
6  601 California Street, 14th Floor
   San Francisco, California 94104
7  Telephone:  (415) 981-4800
8  Facsimile:  (415) 981-4846

9
   Todd D. Muhlstock (*pro hac vice* to be submitted)
10 **BAKER SANDERS LLC**
11 TMuhlstock@BakerSanders.com
   100 Garden City Plaza, Suite 500
12 Garden City, New York 11530
13 Telephone:  (516) 741-4799
14 Facsimile:  (516) 741-3777

15 Attorneys for Plaintiffs

16

17          **UNITED STATES DISTRICT COURT**
18          **CENTRAL DISTRICT OF CALIFORNIA**

19 THOMAS DOROBIALA and ROBIN        **CV14-00294-SVW**
20 WESTMORELAND, on behalf of        (SH)
   themselves and all others similarly situated,    Case No.
21
22          Plaintiffs,             **CLASS ACTION COMPLAINT FOR:**
23     vs.
                                      (1) Negligence;
24 TARGET CORPORATION,                (2) Violation of the California Data
                                          Breach Act; and
25          Defendant.               (3) Violation of the California Unfair
26                                        Competition Law
27
                                     **DEMAND FOR JURY TRIAL**
28

—————————————————————————————————————————
CLASS ACTION COMPLAINT

## SUMMARY OF THE CASE

1.     Starting on the day before Thanksgiving 2013, and for 19 days after, the debit and credit card information of 40 million Target customers was stolen from Targets in-store credit and debit card processing system.  Target later announced on January 10, 2013 that the breach also involved a second group which contained the names, mailing addresses, phone numbers or email addresses of up to 70 million people; therefore as many as 110 million people are believed to have had their personal information taken from Target.   After the data breach, customers' debit and credit card information quickly flooded the black market, sold in batches by the million resulting in fraudulent charges and identity theft for unsuspecting consumers.  Plaintiff Westmoreland's bank informed her that her data was compromised in the Target breach and then 17 lines of credit and two debit cards were opened in her name.  Likewise, Plaintiff Dorobiala had over $600 in unauthorized charges on his credit card and had to change his debit and card numbers and subscribe to a paid credit monitoring service.

2.     As widely reported by the media and experts in the field, Target failed to exercise reasonable security precautions and failed to comply with industry standards for merchants that process debit and credit card information.   Had Target had been compliant with basic industry standards it would have prevented, or much sooner detected  the data breaches that compromised the security of as many as 40 million debit and credit card accounts over a period of 19 days.  Plaintiffs bring this class action lawsuit on behalf of a nationwide class of Target customers against Target for failing to adequately safeguard its customers' credit and debit card information.

## PARTIES

3.     Plaintiff Thomas Dorobiala is a resident of Riverside County, California.

4.     Plaintiff Robin Westmoreland is a resident of Kings County, California.

5.     Defendant Target Corporation is a Minnesota corporation with its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.  Target is the

second largest general merchandise retailer in the Unites States, with 1,797 stores in the United States, and 257 stores in California alone.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action.

7.     Venue is proper in this District under 28 U.S.C. § 139l(b) because a substantial part of the events giving rise to Plaintiffs' Complaint occurred in this District.

## COMMON FACTUAL ALLEGATIONS

8.     On December 18, 2013 reporter Brian Krebs announced that he had learned from confidential credit card issuer sources  (credit card issuers are entities such as banks and credit unions that issue credit cards to their customers) that Target's data had been breached.  Target confirmed the breach on December 19, 2013 and admitted that the 40 million debit and credit card accounts of Target customers who shopped at Target from November 27, 2013 to December 15, 2013 had been stolen.  Target stated in later communications that breach was caused from malware on its vulnerable point of sale system that includes the debit and credit card readers where customers scan their cards to make purchases.  Malware is software, such as computer viruses, that can be used to gain access to computer systems, including point of sale systems, and gather valuable private information.

9.     The people who breached Target's system took "track data" that is stored on the magnetic strip of the card swiped when a customer makes a purchase.  Track data includes customer names, card numbers, card expiration dates, and CVV codes (security codes that are stored in the magnetic strip of the card).  Once someone has track data

CLASS ACTION COMPLAINT

from a credit card or debit card they can create new cards and make fraudulent purchases at stores.

10.     On December 20, 2013, the day after Target admitted to the data breach, Brian Krebs reported that debit and credit cards stolen in the Target data breach had flooded the black market and were being sold in groups of a million cards and were selling for approximately $20 to $100 per card.  One fraud analyst at a major bank who Mr. Krebs spoke with said that before the Target data breach was confirmed he had already bought a large number of his customers' cards through an online store for stolen and debit and credit cards.  Because all of the cards he bought were used at Target he confirmed that his customers had their data breached after shopping at Target.  Mr. Krebs also spoke to a fraud investigator at a different bank who had also bought back hundreds of the bank's customer's cards that were involved in the Target data breach on the black market.  Mr. Krebs also reported that the underground websites where stolen cards are sold are sophisticated and that purchasers can even choose cards based on zip codes so that they can use the card in the same geographic area as the cardholder in order to avoid setting off bank fraud alerts.  Mr. Krebs was not able to identify who was behind the Target data breach, although he was able to trace one stolen card website that was selling stolen Target information back to a man who lives in Ukraine.

11.     Target later announced on January 10, 2013 that the breach also involved the names, mailing addresses, phone numbers or email addresses of a second group consisting of up to 70 million people.  Target said that the data breach was not a new data breach, but was uncovered as part of the ongoing investigation into the breach.

<u>Retail Data Security Standards</u>

12.     The Payment Card Industry ("PCI") Data Security Standard is the industry standard for how retailers like Target must secure credit and debit card data.  The PCI Security Standards Council is the organization that publishes the standards and was created by the major credit card issuer companies to create uniform security standards. Major credit card companies like Visa and MasterCard require that merchants that accept

CLASS ACTION COMPLAINT

their credit and debit cards comply with PCI standards.  Target breached numerous PCI standards that resulted in the data breach of this size and scope.

13.     PCI standards are built around a core set of security goals and have detailed instructions for compliance within each requirement.  The 12 requirements and goals PCI compliance are:

| Goals | PCI DSS Requirements |
|---|---|
| Build and Maintain a Secure Network | 1.  Install and maintain a firewall configuration to protect cardholder data<br>2.  Do not use vendor-supplied defaults for system passwords and other security parameters |
| Protect Cardholder Data | 3.  Protect stored cardholder data<br>4.  Encrypt transmission  of cardholder  data across open, public networks |
| Maintain a Vulnerability Management Program | 5.  Use and regularly update anti-virus software or programs<br>6.  Develop and maintain  secure systems and applications |
| Implement Strong Access Control Measures | 7.   Restrict access to cardholder data by business need to know<br>8.   Assign a unique ID to each person with computer access<br>9.   Restrict physical  access to cardholder data |
| Regularly Monitor and Test Networks | 10. Track and monitor all access to network resources and cardholder data<br>11.  Regularly test security systems and processes |
| Maintain an Information Security Policy | 12.  Maintain a policy that addresses information security for all personnel |

Complying with these standards is critical to protecting customer debit and credit information.

14.     Security systems experts have stated in the news media that the Target data breach would not have been possible if Target had complied with PCI standards.  Ken

4

Stasiak, CEO of SecureState stated: "For a hacker to be able to infiltrate Target's network and access the POS application, several PCI-DSS and PA-DSS controls must not have been implemented effectively. Thus, Target was not compliant during the time of the breach."

15.     Target admitted that the full track data, including CVV codes, of Target members was stolen in the Target data breach.  However, the PCI Standards manual instructs that merchants must not: "store the full contents of any track (from the magnetic stripe located on the back of a card, equivalent data contained on a chip, or elsewhere)." PCI Standards, 2.0, Requirement 3.2.1, p. 29.  John Kindervag, the Vice President and Principal Analyst, of Forrester Research stated: "The fact that three-digit CVV security codes were compromised shows they were being stored.  Storing CVV codes has long been banned by the card brands and the PCI SSC."  He also stated that it was not possible yet to know exactly where Target's system failed, but that it was clear by the fact that CVV codes were stolen that Target "demonstrated a blatant disregard for PCI DSS compliance regulations as well as card security best practices."

16.     Furthermore, the fact that thieves were able to take the debit and credit card information of 40 million people who shopped at Target over a period of 19 days shows that Target did not properly monitor their security systems for breaches.  PCI standards require companies to monitor all system components at least daily.  PCI Standards, Version 2.0, Requirement 10.6, p. 58.  Nick Aceto, technology director at software vendor CardConnect stated:

> We can't say definitely that this breach is a failure of Target's PCI compliance, but based on what Target has said, it's very hard to believe that they were even PCI 2.0 compliant at the time of the breach.
>
> A reason for thinking this is that the attack, involving an enormous amount of data, went on essentially unnoticed for 18 days. How were they not watching the network?
>
> One of the PCI DSS requirements is that you monitor your logs and firewalls every day, looking for unusual activity. This monitoring involves file integrity checks and changes to critical systems files. What's more – the chapter 6 software development life cycle requires the secure distribution and verification of payment applications.

5

Unusual activity isn't always abnormal, but the point of PCI is to monitor and verify that all activity is normal, while not letting distractions – like busy shopping days Black Friday and Cyber Monday, on which the breach occurred – detract from the monitoring effort.

17.    James Lyne, global head of security research at Sophos also stated that if Target was properly monitoring their systems they should have detected that such a large amount of data was being exported, and that no one user or process should have been able to have access to all of the data.  Mr. Lyne stated: "It is critical that organizations handling such data take steps to protect it -- such large volumes of data should never be accessible by one user or process -- and should be encrypted to segment the data and should be detected if an export of such size occurs."

18.    The PCI Council has stated that it is ultimately the retailer's responsibility to make sure that it is in compliance with PCI standards.  Bob Russo, the general manager of the PCI Standard Council stated that: "It's up to the merchant to make sure they stay in compliance and that they are secure. For each of those [big public] breaches credit card companies looked at the logs [and found] that none of them was compliant at the time of the breach."  He also stated: "A layered approach to security is absolutely necessary to protect sensitive payment card data – without ongoing vigilance or a comprehensive security strategy, organizations may be just a change control away from noncompliance. Organizations must make protecting cardholder data a daily priority, not a one-time exercise." Mr. Russo has also said that when merchants have their PCI compliance audited it just shows "a snapshot in time."  He went on to say, "You could be compliant and five minutes later you don't apply a patch and you aren't compliant anymore."

19.    Furthermore, it is commonly recognized in the security industry that PCI compliance is only the starting point for taking reasonable security measures to protect credit and debit card data.  Mr. Russo, manager of the PCI Standard Council stated, "It's important to remember that the PCI [standard] is the floor for card data security, not the ceiling."  Michael Maloof, Chief Technology Officer of TriGeo Network Security stated, "Any business foolish enough to simply make compliance their only security goal has

made a serious, and sometimes fatal, mistake."  He also stated, "Companies have embraced the intent of the regulations and have accepted the responsibility to secure their networks, train their employees and maintain a state of vigilance to ensure their systems remain secure. Other companies see PCI as yet another tax on their businesses and do everything they can to pay as little as possible-that is, until they are forced to pay for the consequences."  Given that the data from 40 to 110 million accounts over a period of 19 days was stolen, it is clear that Target failed to maintain a state of vigilance over its security system and did not comply with PCI standards.

20.  As a consequence of the data breach, Target customers have had to spend time and money securing their accounts and protecting their identities. Target customers who have unauthorized purchases may have to pay fees to their banks to pay for new debit or credit cards, or have to pay fees to have the cards shipped faster so that they do not have to wait weeks to make purchases on their accounts.  Target customers also have had to pay for credit monitoring or credit reports in the wake of the data breach to make sure that their credit is not harmed by anyone who may have stolen their information.

21.  The Target breach occurred right during the busiest shopping time of the year, when many customers were in the middle of holiday shopping and traveling for the holidays.  Many people who were affected by the data breach lost access to their debit and credit cards, and had to wait for their banks to send them new cards.  Some customers were unable to complete their Christmas shopping or had to change or cancel holiday plans because they could not access their funds.   Likewise some Target customers have lost wages from spending hours on the phone or in person with banks and credit agencies trying to reverse unauthorized charges, clear up credit issues, and order new cards.

### PLAINTIFFS' EXPERIENCE

**Plaintiff Thomas Dorobiala**

22.  Mr. Dorobiala has debit and credit cards with Navy Federal Credit Union, and also has a Target RED card that is linked to his bank account.  Mr. Dorobiala made a

7

purchase at Target in Murrieta, California with his Navy Federal Credit Union Visa card on December 2, 2013.  Around December 9, 2013, he received a text message from his bank that there were suspicious charges to his account.  He called his bank and found out that someone had stolen his information and had made purchases of over $600.  His debit card was charged $4.80 in Brier Hill, Pennsylvania, $7.50 in Altmar, New York, and $617.88 in London, England.  The charges were not authorized by Mr. Dorobiala.  He was able to get the charges reversed, but he had to spend several hours checking his accounts to make sure that there were no other fraudulent charges, pulling his credit reports, speaking with his bank about reversing the charges, and reordering his cards.

23.    Mr. Dorobiala is cautious about protecting his identity, and is not aware of being a victim of identity theft in the past.  After having his card information stolen he paid $4.95 for one month of Experian's credit monitoring service, which will increase to $14.95 a month going forward.  Mr. Dorobiala is also at risk for future identity fraud due to Target's data breach.

**Plaintiff Robin Westmoreland**

24.    Robin Westmoreland shopped at Target three times in Hanford, California during the time period when Target's data was breached. She used her MasterCard debit card through USAA bank.  On January 4, 2013 Ms. Westmoreland received the following email from her bank:

> We were notified by MasterCard® that your USAA debit card information, such as your name, debit card number and expiration date, have been compromised. Unauthorized access to this information occurred between Nov. 27 and Dec. 15, 2013, through Target®, a national retailer — USAA's systems were not involved.

25.    Ms. Westmoreland's bank ordered her a new debit card to replace her card that was compromised in the Target data breach.  Ms. Westmoreland ordered her credit report and discovered that 17 lines of credit and two new debit cards were opened in her name.  Someone also attempted to change the email address her bank had on file for her account and contacted the post office to stop her mail, presumably so that she would not receive statements or correspondence about accounts opened in her name.

26. Because of the data breach, Ms. Westmoreland paid $24.95 to pull her credit reports and began paying $12.95 a month for a credit monitoring service. She also lost wages when she had to take time off of work to speak with her bank and clear up her credit. Ms. Westmoreland remains at future risk for identity fraud. When Ms. Westmoreland reported the identity theft to her homeowner's insurance company the insurance representative warned her that she is at risk for future identity fraud, and that it is even possible in the future that someone could have warrants for arrest under her name.

## CLASS ACTION ALLEGATIONS

27. Plaintiff Robin Westmoreland and Plaintiff Thomas Dorobiala bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and a class preliminarily defined as:

> All persons or entities who made purchases with a debit or credit card at a Target store located in the United States between November 27, 2013 and December 15, 2013.

Excluded from the class are Target; any agent, affiliate, parent, or subsidary of Target; any entity in which Target has a controlling interest; any officer or director of Target; any successor or assign of Target; anyone employed by counsel for Plaintiffs in this action; and any Judge to whom this case is assigned, as well as his or her staff and immediate family.

28. Plaintiffs satisfy the numerosity, commonality, typicality, and adequacy prerequisites for suing as a representative party pursuant to Rule 23.

29. **Numerosity**. Over 40 million customers nationwide and their data stolen in the Target data breach. Therefore, the proposed class contains far too many to join in a single action.

30. **Commonality**. Plaintiffs' and class members' claims raise predominantly common factual and legal questions that can be answered for all class members through a single class-wide proceeding. For example, to resolve any class member's claims, it will be necessary to answer the following questions. The answer to each of these questions will necessarily be the same for each class member.

CLASS ACTION COMPLAINT

a.     Did Target have a legal duty to use reasonable security measures to protect class members' credit and debit card information?

b.     Did Target breach its legal duty by failing to protect class members' credit and debit card information?

c.     Did Target act reasonably in securing its customer data?

d.     Did Target violate the California Data Breach Act by failing to provide reasonable measures to secure the debit and credit card data of its customers?

e.     Did any breach of Target's legal duties cause Plaintiffs and the class members to suffer damages?

f.     Are Plaintiffs and class members entitled to damages or equitable relief?

31.     **Typicality.**  Plaintiffs' claims are typical of class members' claims as each arises from the same data breach and the same alleged negligence on the part of Target in securing its customers' credit and debit card information.

32.     **Adequacy**.  Plaintiffs will fairly and adequately protect the interests of the class.  Their interests do not conflict with class members' interests and they have retained counsel experienced in complex class action litigation and data privacy to vigorously prosecute this action on behalf of the class.

33.     In addition to satisfying the prerequisites of Rule 23(a), Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(3).  Common questions of law and fact predominate over any questions affecting only individual members and a class action is superior to individual litigation.  The amount of damages available to individual plaintiffs is insufficient to make litigation addressing Target's conduct economically feasible in the absence of the class action procedure.

34.     In the alternative, class certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, thereby making final injunctive relief appropriate with respect to the members of the class as a whole.

CLASS ACTION COMPLAINT

# FIRST CAUSE OF ACTION
## For Negligence

35.     Plaintiffs incorporate the above allegations by reference.

36.     In collecting the debit and credit card information of its customers, Target owed Plaintiffs and class members a duty to employ reasonable security measures to protect that information.

37.     Target had a duty of care to take reasonable security measures to protect its customer data because of its special relationship with Plaintiffs and the Class.  Target has a special relationship with Plaintiff and the Class for the following reasons:

a)     Target's security system and procedures for handling the debit and credit card information of its customers were intended to affect Plaintiffs and the Class.  Target was aware that by taking the debit and credit card information of its customers that it had a responsibility to take reasonable security measures to protect the data from being stolen.

b)     It was very foreseeable that if Target did not take reasonable security measures that the data of Plaintiffs and the Class would be stolen.  It is well known in the retail industry that there are people who use malicious software to steal the debit and credit card information of retail customers.

c)     It is clear that Plaintiffs and the Class suffered injuries because they had to purchase credit monitoring services and credit reports.

d)     There is a very close connection between Target's failure to take reasonable security standards to protect its customers' data and the injury to Plaintiffs and the Class.  When customers have their debit and credit card information stolen they are at risk for identity theft, and need to buy credit monitoring services and purchase credit reports to protect themselves from identity theft.

e)     Target is morally to blame for not protecting the data of its customers by failing to take reasonable security measures.  If Target had taken reasonable security measures data thieves would not have been able to take the debit and credit card information of over 40 million accounts of Target shoppers over a 19 day period.

f)      The policy of preventing future harm weighs in favor of finding a special relationship between Target and the Class.  Customers count on Target to keep their data safe.  If companies are not held accountable for failing to take reasonable security measures to protect customers' debit and credit card information, they will not take the steps that are necessary to protect against future data breaches.

38.     Target failed to secure its customers' data, and monitor its point of sale systems to identify suspicious activity.  In failing to employ take reasonable security measures, Target departed from the reasonable standard of care and violated its duty to protect Plaintiffs' and class members' debit and credit card information.

39.     As a direct and proximate result of Target's failure to exercise reasonable care and use commercially reasonable security measures, the debit and credit information of Target customers was accessed by unauthorized individuals who could use the information to commit debit and credit card fraud.

40.     The unauthorized access to Plaintiffs' and class members' personal information was reasonably foreseeable by Target.

41.     Neither Plaintiffs nor other class members contributed to the security breach or Target's employment of insufficient security measures to safeguard customer's debit and credit card information.

42.     As a direct and proximate result of Target's negligence, Plaintiffs and class members suffered injury through the breach of their debit card and credit card information.  Plaintiffs and the class face a heightened risk of identity theft in the future.  Class members, including Plaintiffs, also have suffered economic damages, including the cost of credit monitoring service and the expense of purchasing credit reports.

## SECOND CAUSE OF ACTION
### For Violations of the California Data Breach Act, Cal. Civ. Code § 1798.80, *et. seq.*

43.     Plaintiffs reallege, as if fully set forth, each and every allegation herein.

44.     Plaintiffs bring this cause of action on behalf of all California residents and entities who shopped at Target between November 27, 2013 and December 15, 2013.

45.     The breach of the data of the debit and credit card information of 40 million accounts of Target customers constituted a "breach of the security system" of Target pursuant to Cal. Civ. Code §1798.82(g).

46.     Target unreasonably delayed informing Plaintiff and members of the Class about the breach of security of Class members' debit and credit card information after Target knew the data breach occurred.

47.     Upon information and belief, no law enforcement agency instructed Target that notification to Plaintiffs and Class members would impede investigation.

48.     Target's failure to inform Plaintiffs and the Class within a reasonable time period was willful, intentional, and reckless.  Target contacted credit card issuers about the breach before December 19, 2013, but Target willfully, intentionally, and recklessly failed to inform Plaintiffs and the Class about the breach until after it was announced in the press.  Target could have informed Plaintiffs and the Class about the breach when it started contacting credit card issuers, but instead chose to withhold this information from Plaintiffs and the class.

49.     Under Cal. Civ. Code § 1798.81.5(b), a business that has personal information about a California resident "shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

50.     Cal. Civ. Code § 1798.81.5(d)(1)(C) includes debit and credit card information in the definition of "personal information."

51.     Target recklessly, or as a matter of gross negligence, failed to provide reasonable and adequate security measures to protect its customer's credit and debit card information.

52.     As a result of Target's violation of Cal. Civ. Code § 1798.82 and§ 1798.81.5(b), Plaintiffs and members of the Class incurred economic damages relating to expenses for credit monitoring and purchasing credit reports.

CLASS ACTION COMPLAINT

53.     Plaintiffs, individually and on behalf of the members of the Class, seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to: (a) damages suffered by members of the Class; (b) statutory damages for Target's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; and (c) equitable relief.

54.     Plaintiffs, individually and on behalf of the members of the Class, also seeks reasonable attorneys' fees and costs under Cal. Civ. Code § 1798.84(g).

## THIRD CAUSE OF ACTION
**For unlawful, unfair, and fraudulent business practices under California Business and Professions Code § 17200, *et seq*.**

55.     Plaintiffs reallege, as if fully set forth, each and every allegation herein.

56.     Plaintiffs bring this cause of action on behalf of all California residents and entities who shopped at Target between November 27, 2013 and December 15, 2013.

57.     Target's acts and practices, as alleged in this complaint, constitute unlawful and unfair business practices, in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

58.     Target's acts and practices, as alleged in this complaint, constitute unlawful practices in that they violate the California Data Breach Act, Cal. Civ. Code § 1798.80, *et. seq*.

59.     Target's practices were unlawful and in violation of Cal. Civ. Code § 1798.81.5(b) of the California Data Breach Act because Target failed to take reasonable security measures in protecting its customers' data.

60.     Target's practices were also unlawful and in violation of Cal. Civ. Code § 1798.82 because Target unreasonably delayed informing Plaintiffs and members of the Class about the breach of security after Target knew the data breach occurred.

61.     Target's practices were also unlawful because Target was negligent in failing to take reasonable security measures to protect the debit and credit card information of its customers.

CLASS ACTION COMPLAINT

62.     By failing to take reasonable security measures to protect its customers' data, Target engaged in unfair business practices by engaging in conduct that undermines or violates the stated policies underlying the California Data Breach Act.  The California Data Breach Act states that, "It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own or license personal information about Californians to provide reasonable security for that information."   Cal. Civ. Code § 1798.81.5(a).  Target's failure to take reasonable security measures to protect its customers' data violates the stated policy of the Legislature in that businesses are to protect the personal information of their customers.

63.     In unduly delaying informing customers of the data breach, Target engaged in unfair business practices by engaging in conduct that undermines or violates the stated policies underlying the California Data Breach Act.  In enacting the California Data Breach Act, the Legislature stated that: "[i]dentity theft is costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative."  2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST).  Target unduly delayed informing customers of the data breach.  For instance, Target notified credit card issuers when it first learned of the breach, but did not inform its customers of the breach until it was announced in the news media.  Target's failure to notify class members expeditiously about the breach violated the policy intent of the legislature in enacting the California Data Breach Act.

64.     As a direct and proximate result of Target's unlawful and unfair business practices as alleged herein, Plaintiffs and Class members have suffered injury in fact. Plaintiffs and the Class have been injured in that they have had to purchase credit monitoring services and credit reports because they are at risk for future identity theft.

65.     Because of Target's unfair and unlawful business practices, Plaintiffs and Class members are entitled to equitable relief, restitution, attorneys' fees and costs,

declaratory relief, and a permanent injunction enjoining Target from its unlawful and unfair practices.  Plaintiffs seek an injunction requiring Target to take reasonable security measures to ensure that customers' data in compliance with the Data Breach Act. Plaintiffs can provide specific data security measures for the injunction after discovery is taken and data security experts are consulted.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, requests that the Court:

a.     Certify this case as a class action on behalf of the class defined above, appoint Robin Westmoreland and Thomas Dorobiala as class representatives, and appoint their counsel as class counsel;

b.     Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and other class members;

c.     Award damages to Plaintiffs and class members in an amount to be determined at trial;

d.     Award Plaintiffs and class members their reasonable litigation expenses and attorneys' fees;

e.     Award Plaintiffs and class members pre- and post-judgment interest, to the extent allowable; and

f.     Award such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  January 13, 2014        **GIRARD GIBBS LLP**

By: _____
      Eric H. Gibbs

Matthew B. George
Jennifer L. McIntosh

601 California Street, 14th Floor
San Francisco, CA 94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Todd D. Muhlstock (*pro hac vice* to be submitted)
**Baker Sanders LLC**
TMuhlstock@BakerSanders.com
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Telephone:  (516) 741-4799 ext. 1226
Facsimile:   (516) 741-3777

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Stephen V. Wilson_____ and the assigned Magistrate Judge is _____Stephen J. Hillman_____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-CV-00294-SVW (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____January 13, 2014_____
Date

By  MDAVIS
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

### Subsequent documents must be filed at the following location:

☐ Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

☐ Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

☐ Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| THOMAS DOROBIALA and ROBIN WESTMORELAND, on behalf of themselves and all others similarly situated | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) ) |
| TARGET CORPORATION, | ) ) ) |
| *Defendant(s)* | ) |

Civil Action No. **CV 14-00294** SVW (Sx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Target Corporation
1000 Nicollet Mall, TPS 2672
Minneapolis, Minnesota 55403


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Eric H. Gibbs
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*

MARILYN DAVIS

Date:    01/13/2014
_____            _____
*Signature of Clerk or Deputy Clerk*

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Robin L. Westmoreland and Thomas L. Dorobiala

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Target Corporation

**(b)** County of Residence of First Listed Plaintiff   Riverside County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Eric H. Gibbs, 601 California Street, 14th Floor
San Francisco, California 94104
Telephone: (415) 981-4800

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. s 1332(d) (CAFA); Negligence; Violation of the California Data Breach Act; Violation of California Unfair Competition Law

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property |  | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation |  | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☒ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV |  | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other |  |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** |  |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act |  |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations |  |
|  | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act |  |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act |  |
|  |  |  | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation |  |
|  |  |  | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act |  |

**FOR OFFICE USE ONLY:**      Case Number:

CV14-00294

CV-71 (11/13)                          CIVIL COVER SHEET                          Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes   [X] No | [ ] Los Angeles | Western |
| If "no, " go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| [ ] Yes   [X] No | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county  in which the majority of PLAINTIFFS reside. | |
| If "no, " go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | [ ] Los Angeles | [ ] Los Angeles | Western |
| | [ ] Ventura, Santa Barbara, or San Luis Obispo | [ ] Ventura, Santa Barbara, or San Luis Obispo | Western |
| | [ ] Orange | [ ] Orange | Southern |
| | [ ] Riverside or San Bernardino | [ ] Riverside or San Bernardino | Eastern |
| | [ ] Other | [ ] Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | [ ] | [ ] | [ ] | [ ] | [X] | [ ] |
| Indicate the location in which a majority of defendants reside: | [ ] | [ ] | [ ] | [ ] | [X] | [ ] |
| Indicate the location in which a majority of claims arose: | [ ] | [ ] | [ ] | [ ] | [X] | [ ] |

**C.1.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column C

[ ] only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right. ➡

**C.2.  Is either of the following true?  If so, check the one that applies:**

[ ] 2 or more answers in Column D

[ ] only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western Division |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed? ☒ NO ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case? ☐ NO ☒ YES

If yes, list case number(s): 8:14-cv-00037; 2:14-cv-00026; 2:14-cv-00003; 2:13-cv-09519; 2:13-cv-09461

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
☒ A. Arise from the same or closely related transactions, happenings, or events; or

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**                                           DATE:  1-13-2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |